**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

APPALACHIAN POWER COMPANY,
a Virginia corporation,

        Plaintiff,

v.             CIVIL ACTION NO.   3:14-12051

LARRY K. KYLE a/k/a Larry D. Kyle, an individual;
SHEILA MARIE KYLE, an individual;
CHARLES M. CHILDERS, an individual;
KRISTINA M. CHILDERS, an individual;
CITY NATIONAL BANK OF WEST VIRGINIA,
a national banking association; and
OTIS L. O'CONNOR, TRUSTEE,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court are a number of motions by the parties, including: (1) a

Motion to Dismiss by Defendants Charles M. and Kristina M. Childers (ECF No. 10); (2) a Motion

to Dismiss by Defendants Larry and Sheila Kyle (ECF No. 14); (3) the Childers' Alternative

Motion for More Definite Statement (ECF No. 32); (4) the Kyles' Motion for Leave to File

Third-Party Complaint (ECF No. 36); (5) the Childers' Motion for Leave to File a Cross-Claim

and Third-Party Complaint (ECF No. 37); and (6) State Farm Fire & Casualty Company's Motion

to Intervene (ECF No. 28).   For the following reasons, the Court **DENIES** the Motions to

Dismiss, **DENIES** the Motion for a More Definite Statement, **GRANTS** the Kyles' Motion for

Leave to File Third-Party Complaint, **DENIES** as premature the Childers' Motion for Leave to

File a Cross-Claim, **DENIES WITHOUT PREJUDICE** the Childers Motion to file a Third-Party

Complaint, and **GRANTS** State Farm's Motion to Intervene.

**I.**
**FACTS**

On March 11, 2014, Plaintiff Appalachian Power Company (APCO) filed a Complaint in this Court based upon diversity of citizenship. *See* 28 U.S.C. § 1332.   In the Complaint, APCO asserts that it is the owner of a three-hundred-foot-wide easement for a transmission line across a parcel of property in Milton, West Virginia. *Compl.* at ¶¶8-10.   The easement provides, in part, that "no building or other structure shall be placed by the Grantors within one hundred fifty (150) feet of the centerline of said right of way easement[.]" *Id.* at ¶13.[1] APCO claims that it was granted the easement on February 25, 1964, by the then owners of the property, Kermit and Roamaine [sic] Carney. *Id.* at ¶9

At some point, the Childers became owners of the property.   On May 17, 2013, the Childers conveyed a portion of their property to Mrs. Childers' parents, the Kyles, for the sum of ten dollars.   The deed between the Childers and the Kyles provides that "[t]his conveyance is made subject to any and all existing . . . easements . . . as the same may appear in instruments of record in the . . . [Cabell County] Clerk's Office." *Deed*, at 2 (May 17, 2013).[2]   The property conveyed to the Kyles is fully contained within the boundaries of the easement. *Compl.* at ¶10.

Thereafter, the Kyles obtained a loan from Defendant City National Bank of West Virginia in the amount of $183,499.00 to build a house on the property. *Id.* at ¶17.   The loan was secured by a Deed of Trust, which conveys to Defendant Trustee, Otis L. O'Connor, "such rights in the Larry Kyle and Sheila Kyle Property as are specified in said Deed of Trust." *Id.*   After

---

[1] A copy of the recorded easement is attached to the Complaint as Exhibit B.

[2] A copy of the deed is attached to the Complaint as Exhibit A.

construction of the house began, APCO filed this action alleging that the Kyles' partially built house and other appurtenant structures fall within the boundaries of the easement. *Id*. at ¶18.

In Count 1, APCO claims, inter alia, that the Kyles wrongfully built the house on the easement and the construction interferes with its rights under the agreement. *Id*. at ¶20-22. Therefore, APCO requests this Court enter a declaratory judgment that the house wrongfully violates the covenants and the Kyles have a duty to remove the house.   APCO also requests this Court enter a permanent injunction requiring the Kyles to remove the house within a specified time period and prohibiting them from erecting any other building or structure on the easement.   In the alternative, APCO requests this Court declare it has a right to remove the house and be awarded damages for its costs and expenses.

In Count II, APCO asserts that the Childers "knew or should have known before they conveyed and/or sold" the property to the Kyles that the Kyles intended to build a house on it. *Id*. at ¶24.   In addition, APCO claims that the Childers "knew or should have known before they conveyed and/or sold" the property that such construction was prohibited by the easement, but the Childers did not disclose this information to the Kyles. *Id*. at ¶¶25-26.   APCO alleges that the Childers "wrongfully, knowingly, and/or intentionally induced" the Kyles into constructing the house on the property in violation of the easement. *Id*. at ¶27.   APCO further asserts that the Childers "wrongfully, knowingly, and/or intentionally caused interference with" its property rights. *Id*. at ¶28.   Therefore, APCO seeks, *inter alia*, reimbursement of any costs and expenses it incurs in removing the house and punitive and exemplary damages.

Both the Kyles and the Childers have moved to dismiss the Complaint for failure to establish the amount in controversy exceeds $75,000.   The Childers also move to dismiss the claims against them for failure to state a claim.

## II.
## DISCUSSION

### A.
### Jurisdictional Amount

The Kyles and Childers argue that APCO's Complaint does not contain an *ad damnum* clause and the Kyles submitted a report from APCO's expert, Richard J. Meckstroth, who opines that the estimated cost for demolishing the house and restoring the site is $15,944.64. *See Report by Richard J. Meckstroth*, ECF Nos. 70-1 (October 22, 2014).   Therefore, both the Kyles and the Childers assert that APCO has failed to demonstrate the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332.

In response, APCO asserts it easily has met the jurisdictional limits because the proper measure of damages is not merely the cost to demolish the house.   Instead, as APCO has requested declaratory and injunctive relief, "it is well established that the amount in controversy is measured by the *value* of the object of the litigation." *McCoy v. Erie Ins. Co.*, 147 F. Supp.2d 481, 492 (S.D. W. Va. 2001) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (internal quotation marks omitted; emphasis added in *McCoy*)).   In this regard, the Fourth Circuit has "adopted the either-viewpoint rule, concluding the value of injunctive relief is properly judged from the viewpoint of either party." *Id.* (citing *Government Emps Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964) (stating "the amount in controversy is the pecuniary result to either party which that judgment would produce" and explicitly referencing its use of "[t]he test of

-4-

'value to either party'" (other citations omitted)).   The Fourth Circuit further has explained that "the value of an injunction for amount in controversy purposes" is determined "by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (citing *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)).

In this case, APCO alleges in the Complaint that City National Bank loaned the Kyles $183,499.00 to construct the house. *Compl.* at ¶ 17.   In their Answer, City National Bank of West Virginia and Otis L. O'Connor, Trustee, admit to this allegation. *Answer of City National and Trustee*, ¶17, ECF No. 7.   Assuming the truth of this statement, as this Court must on a motion to dismiss, the value of the house to the Kyles and City National Bank far exceeds the federal jurisdictional requirements.   Therefore, the Court **DENIES** the Kyles' and Childers' motions to dismiss based on this ground.[3]

---

[3]Although this allegation in and of itself is sufficient for jurisdictional purposes, APCO also has submitted as exhibits three Construction Draw Requests from City National Bank to the Kyles for a total amount of $159,599.13 to pay for work that was completed on the house. ECF 74-1.   It also submitted an affidavit from David R. Given, a licensed real estate appraiser, who opined the property has a present value exceeding $90,000. *Affidavit of David R. Given,* (Dated April 21, 2014), ECF No. 13-1.   On a Rule 12(b)(6) motion, the Court may consider the pleadings, matters of public record, and documents attached to the motions that are integral to the Complaint and whose authenticity is not in dispute without converting the motion into one for summary judgment. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).   As these exhibits arguably go beyond what can be considered on a motion to dismiss, the Court conceivably would have to convert the motion into one for summary judgment if it considers them. However, even under a summary judgment standard, the Court would deny the motions as it is clear the potential cost to the Kyles and City National Bank exceeds $75,000.

**B.**
**Failure to State a Claim**

Next, the Childers argue that APCO has failed to state a claim against them.   In

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed

the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used

to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.   In its place, courts must now

look for "plausibility" in the complaint.   This standard requires a plaintiff to set forth the

"grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation

marks and citations omitted).   Accepting the factual allegations in the complaint as true (even

when doubtful), the allegations "must be enough to raise a right to relief above the speculative

level . . . ." *Id*. (citations omitted).   If the allegations in the complaint, assuming their truth, do "not

raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of

minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal

quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the

requirements of Rule 8 and the "plausibility standard" in more detail.   In *Iqbal*, the Supreme

Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678

(internal quotation marks and citations omitted).   However, a mere "unadorned,

the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*.   "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).   Facial plausibility

exists when a claim contains "factual content that allows the court to draw the reasonable inference

-6-

that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).   The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).   Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.   If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)).   The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

In this case, APCO alleges that the Childers are liable for "wrongfully, knowingly, and/or intentionally" inducing a third party (the Kyles) to trespass on the easement and to breach a duty the Kyles had to APCO.   The Childers argue, however, that, although the easement was recorded and it can be said they had constructive knowledge of it, they did not have actual knowledge it existed.   In addition, the Childers assert they cannot be liable to APCO because the conveyance to the Kyles was subject to "any and all existing . . . easements . . . the same may appear in instruments of record in the . . . [Cabell County] Clerk's Office." *Deed*, at 2.   Thus, the Childers insist that they sold it subject to the easement, and it was the Kyles' obligation to do a title search to determine whether the property was encumbered by an easement.

Although the Childers deny intent and actual knowledge, the Court must assume the truth of the matter asserted in the Complaint and determine whether APCO has stated a plausible claim against the Childers.   Here, the Court finds that APCO has met the plausibility test.   Certainly, the Childers can argue about what they knew or did not know and whether they encouraged the Kyles to build a house on the property.   However, those issues are best addressed after an adequate time for discovery has occurred.   They are not matters well suited to be determined under Rule 12.   Therefore, the Court **DENIES** the Childers' motion for failure to state a claim.

## C.
### Motion for More Definite Statement

Nearly four months after filing their Motion to Dismiss, the Childers filed an Alternative Motion for More Definite Statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.[4]   ECF No. 32.   However, Rule 12(g)(2) provides that, with exceptions not relevant here, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).   As the Childers could have raised a Rule 12(e) motion when they filed their initial Motion to Dismiss, the Court finds their belated attempt for a more definite statement violates the Rule and, therefore, **IS DENIED**.

---

[4]In relevant part, Rule 12(e) states that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e), in part.

**D.**
**Motion for Leave to Intervene**

The Kyles have filed for Leave to File a Third-Party Complaint against Randolph Engineering Co., Inc. ECF No. 36.   A defendant may assert a third-party complaint against a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1), in part.   "A third-party complaint . . . must be based upon a theory of derivative or secondary liability." *Podiatry Ins. Co. of Am. v. Falcone*, Civ. Act. No. 3:10-1106, 2011 WL 1750708, *5 (S.D. W. Va. Feb. 25, 2011) (citations omitted).   In their proposed Third-Party Complaint (ECF NO. 36,   Exhibit A), the Kyles allege that they retained Randolph Engineering to survey the property and determine, inter alia, whether any easements existed.   The Kyles assert Randolph Engineering breached its duty by failing to identify the easement.   Therefore, the Kyles assert Randolph Engineering is liable under a theory of contribution for any amount the Kyles may owe APCO.[5]   In light of these allegations, the Court **GRANTS** the motion and **DIRECTS** the Clerk to file the Kyles' Third-Party Complaint against Randolph Engineering.

**E.**
**The Childers' Motion for Leave to File a**
**Cross-Claim and Third-Party Complaint**

The Childers also request that they be permitted to file a cross-claim against City National Bank and a Third-Party Complaint against BesTitle Agency, Inc., Randolph Engineering, Schumacher Homes of Circleville, Inc., and Nathan D. Nibert. ECF No. 37.   As City National Bank aptly points out in its response with respect to the cross-claim, the Childers have not yet filed an Answer in this case.   Therefore, their motion is premature as a procedural matter because there simply is no pleading from which a cross-claim against City National can be attached.   Thus, the

---

[5]The Kyles also assert Randolph Engineering is liable for compensatory and general damages and attorneys' fees and expenses.

Court **DENIES** the motion to file a cross-claim.   When the Childers file their Answer, they should be guided by the requirements of Rule 13 of the Federal Rules of Civil Procedure in filing a cross-claim against a coparty.   As to the Third-Party Complaint, the Childers did not attach a copy of their proposed Third-Party Complaint to their motion.   Although the Childers generally outline what claims they may allege, the Court declines to speculate as to whether an unseen Third-Party Complaint meets the requirements of Rule 14.   Therefore, the Court **DENIES** the Childers' motion **WITHOUT PREJUDICE**.

### F.
### State Farm's Motion for Leave
### to Intervene

State Farm Fire & Casualty Company (State Farm), as the Childers' insurance company, has filed a Motion for Leave to Intervene pursuant to both Rule 24(a) and Rule 24(b) of the Federal Rules of Civil Procedure. ECF No. 28.   There has been no opposition to this motion filed.   Pursuant to Rule 24(a), a court must permit intervention to anyone who, upon timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a), in part.   The Fourth Circuit has stated that in order to intervene under Rule 24(a), the intervenor "must . . . satisfy four requirements.   First, the intervenor must submit a timely motion to intervene in the adversary proceeding.   Second, he must demonstrate a 'direct and substantial interest' in the property or transaction.   Third, he has to prove that the interest would be impaired if intervention was not allowed.   Finally, he must establish that the interest is inadequately represented by existing parties." *In re Richman*, 104 F.3d 654, 659 (4th Cir. 1997) (citations and footnote omitted).

"In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (citation omitted).   In this case, the Court finds that State Farm filed its motion early in these proceedings when very little progress had been made.   In addition, the Court finds that the parties will not be unduly prejudiced by State Farm's intervention because the Court is permitting the Kyles to file a cross-claim against Randolph Engineering and the Court previously vacated the Scheduling Order on December 16, 2014.   Therefore, a new Scheduling Order already is necessary irrespective of State Farm's motion.   Accordingly, the Court finds that State Farm has met the first prong of the four-part test for intervention under Rule 24(a).

In addition, it is clear that State Farm has a "direct and substantial interest" in the transaction as the Childers have demanded it defend and indemnify them in this action.   Further, it is evident that the Childers and State Farm do not have the same interest in the underlying suit. As the Childers state in their Memorandum in Support of their Motion for More Definite Statement (ECF No. 33), they anticipate that State Farm will argue there is no insurance coverage because the claims against the Childers involve only knowing and/or intentional misconduct and the claims do not include unintentional misconduct and/or damage to or a loss of use of APCO's property. Similarly, in its Motion to Intervene, State Farm quotes exclusionary policy language it believes applies that releases it from any duty to defend or indemnify the Childers.   The Childers disagree with State Farm's assessment and argue the claims against them do include unintentional misconduct and/or damage to or a loss of the use of property and such claims are covered under

-11-

their insurance policy.   Given this divergence of interests in the underlying matter, the Court finds that State Farm meets both the third and fourth prong of Rule 24(a) because State Farm's interest will not necessarily be adequately represented by the Childers and State Farm's interest may be impaired if intervention is not permitted.   Therefore, the Court **GRANTS** State Farm's Motion to Intervene. ECF No. 28.[6]

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** the Motion to Dismiss by Defendants Charles M. and Kristina M. Childers (ECF No. 10), **DENIES** the Motion to Dismiss by Defendants Larry and Sheila Kyle (ECF No. 14), **DENIES** the Motion for More Definite Statement by the Childers (ECF No. 32), **GRANTS** the Kyles' Motion for Leave to File Third-Party Complaint (ECF No. 36), **DENIES** as premature the Childers' Motion for Leave to File a Cross-Claim (ECF No. 37), **DENIES WITHOUT PREJUDICE** the Motion to file a Third-Party Complaint by the Childers (ECF No. 37), and **GRANTS** the Motion to Intervene by State Farm (ECF No. 28).

---

[6]However, even if the Court did not find intervention warranted under Rule 24(a), it would grant permissive intervention under Rule 24(b).   Rule 24(b) provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1), in part.   In deciding whether permissive intervention is proper, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).   For the reasons stated above with respect to Rule 24(a), the Court finds that permissive intervention would be proper.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        January 30, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE

-13-